UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEYWELL L.L.C.,

                                Plaintiff,

         v.

PAVILION BUILDING INSTALLATION
   SYSTEMS, LTD., ZEHN BURHAN UZMAN,
DOUGLAS BARRETT, LI ZHI CAO, and
BARRETT CRANE DESIGN & ENGINEERING,

                              Defendants.

_____

**REPORT**
**and**
**RECOMMENDATION**

09-CV-00934S(F)

APPEARANCES:                LEECH TISHMAN FUSCALDO & LAMPL, LLC
                              Attorneys for Plaintiff
                              CHARLES KELLY,
                              CHRISTINE M.  COSENTINO,
                              KRISTIN ANDERS LAWSON, and
                              RYAN ORVILLE HEMMINGER, of Counsel
                              525 William Penn Place
                              30th Floor
                              Pittsburgh, Pennsylvania 15219

                              HAGERTY & BRADY
                              Attorneys for Plaintiff
                              MICHAEL A.  BRADY, and
                              EDWIN P.  HUNTER, of Counsel
                              69 Delaware Avenue
                              Suite 1010
                              Buffalo, New York 14202

                              PAVILION BUILDING INSTALLATION
                                SYSTEMS, LTD.
                              Pavilion Building Installation Systems, Ltd.
                              Unit 30
                              55 Chevigny Street
                              St.  Albert, Alberta, Canada T8N 7L3

THE BILICKI LAW FIRM, P.C.
Attorneys for Defendants Pavilion Building Installation
System, Ltd., and Cao
BYRON A.  BILICKI, of Counsel
1285 North Main Street
Jamestown, New York 14701

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
Attorneys for Defendant Uzman
BENJAMIN FISHER NEIDL and
PETER A. LAURICELLA, of Counsel
677 Broadway
9th Floor
Albany, New York 12207

SUGARMAN LAW FIRM LLP
Attorneys for Defendants Barrett and Barrett Crane
  Design & Engineering
BRIAN F.  SUTTER, of Counsel
1600 Rand Building
14 Lafayette Square
Buffalo, New York 14203

## JURISDICTION

This case was referred to the undersigned by Honorable William M. Skretny on

February 8, 2010, for preparation of a report and recommendation on dispositive

motions.  The matter is presently before the court on Defendant Uzman's motion for

partial judgment on the pleadings (Doc. No. 91), filed May 31, 2011.


## BACKGROUND

Plaintiff Keywell L.L.C. ("Plaintiff," "Keywell," or "project owner"), an Illinois limited

liability company, operates a specialty scrap metal recycling business throughout the

United States, including, as relevant to this action, in Frewsberg, New York ("the

Frewsberg Facility").  On September 27, 2007, representatives from Keywell and

2

Defendant Pavilion Building Installation Systems, Ltd. ("Pavilion"), a Canadian company engaged in the design, marketing, and selling of lightweight building structures, executed a written contract providing that Pavilion would design, manufacture, and erect a structure at Keywell's Frewsberg facility ("the structure").  On October 29, 2009, Plaintiff commenced this action filing the original complaint (Doc. No. 1), alleging the structure was inadequately designed and was unable to withstand the elements, became damaged, failed to perform as anticipated, and is a total loss.  Defendants Douglas Barrett ("Barrett"), and Zehn Burham Uzman ("Uzman"), are professional engineers who worked for Pavilion as independent contractors, whereas Defendant Li Zhi Cao ("Cao") is a professional engineer and Pavilion employee ("Pavilion Defendants").  The Complaint asserted four claims for relief, including a single breach of contract claim against Pavilion and three separate claims for professional negligence asserted against Defendants Uzman, Barrett, and Cao.

On March 2, 2011, Plaintiff filed an Amended Complaint (Doc. No. 73) ("Amended Complaint"), naming as Defendants Pavilion, Uzman, Barrett, and Cao, in addition to Barrett's company, Barrett Crane Design & Engineering ("Barrett Crane") ("Barrett Defendants"), and asserting four claims for relief including (1) breach of contract against Pavilion, Uzman, and Barrett Defendants ("First Claim"); (2) professional negligence against Uzman ("Second Claim"); (3) professional negligence against Barrett Defendants ("Third Claim"), and professional negligence against Cao ("Fourth Claim").

Answers containing crossclaims against co-defendants for indemnification and contribution were filed by Uzman on March 16, 2011 (Doc. No. 76) ("Uzman's Answer"),

by Pavilion Defendants on March 21, 2011 (Doc. No. 77), and by Barrett Defendants on

April 29, 2011 (Doc. No. 80).  Answers to the crossclaims were filed on May 19, 2011

by Pavilion Defendants (Doc. No. 85 (Uzman's crossclaim), and Doc. No. 86 (Barrett

Defendants' crossclaim)), May 23, 2011 by Uzman (Doc. No. 87) (Barrett Defendants'

crossclaim), and May 26, 2011 by Barrett Defendants (Doc. No. 88 (Uzman's

crossclaim), and Doc. No. 89 (Pavilion Defendants' crossclaim)).

On May 31, 2011, Uzman moved for partial judgment on the pleadings seeking

to dismiss the First Claim insofar as it alleges breach of contract against Uzman

("Uzman's motion").  The motion is supported by the attached Attorney Affirmation of

Peter A. Lauricella, Esq. in Support of Defendant Zehn Burhan Uzman's Motion for

Judgment on the Pleadings Pursuant to Fed.R.Civ.P. 12(c) (Doc.  No. 91-1) ("Lauricella

Affirmation"), exhibits A through D ("Uzman Exh(s). __"), and the Memorandum of Law

in Support of Defendant Zehn Burhan Uzman's Motion for Partial Judgment on the

Pleadings Pursuant to Fed.R.[Civ.]P. 12(c) (Doc. No. 91-5) ("Uzman's Memorandum").

In opposition to Uzman's motion, Plaintiff filed on July 1, 2011, Keywell, LLC's

Memorandum in Opposition to Zehn Burhan Uzman's Motion for Partial Judgment on

the Pleadings or, in the Alternative, Keywell's Motion to Defer Consideration of Uzman's

Motion Pursuant to Federal Rule of Civil Procedure 56(d) (Doc. No. 95) (Plaintiff's

Response"), and the Declaration of Charles Kelly, Esq., in Support of Keywell LLC's

Motion to Defer Consideration of Defendant Uzman's Motion for Partial Summary

Judgment (Doc. No. 95-1) ("Kelly Declaration").  On July 15, 2011, Uzman filed the

Reply Attorney Affirmation of Peter A. Lauricella, Esq., in Further Support of Defendant

Zehn Burhan Uzman's Motion for Judgment on the Pleadings Pursuant to Rule 12(c)

(Doc. No. 97) ("Lauricella Reply Affirmation"), the Reply Memorandum of Law in Further Support of Defendant Zeyn [*sic*] Burhan Uzman's Motion for Partial Judgment on the Pleadings Pursuant to Fed.R.Civ.P. 12(c) (Doc. No. 97-1) ("Uzman's Reply"), and exhibits P through R ("Uzman's Reply Exh(s). __").  Oral argument was deemed unnecessary.

Based on the following, Defendant Uzman's motion (Doc. No. 91), should be DENIED.

## FACTS[1]

Keywell, L.L.C. ("Plaintiff," "Keywell," or "project owner"), is engaged in the business of recycling, selling, and processing specialty scrap metals, and operates facilities in eight locations throughout the United States, including, as relevant to this action, in Frewsberg, New York ("the Frewsberg facility").  Defendant Pavilion Building Installation Systems, Ltd. ("Pavilion" or "the general contractor"), is engaged in the business of designing, selling, and erecting lightweight building structures.  Defendant, Li Zhi Cao ("Cao"), is a Pavilion employee.  A contract titled "Keywell LLC & Pavilion Building Installation System, Ltd.  Master Agreement" ("the Master Agreement"),[2] signed by representatives of Keywell and Pavilion on September 27, 2007, provided for Pavilion to design, manufacture, and install a Pavilion Texan Model building structure at Keywell's Frewsberg facility ("the structure").

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

[2] A copy of the Master Agreement is attached as Exhibit A to the Amended Complaint.

The structure was to be a lightweight building of a permanent nature, suitable for industrial settings, able to accommodate forklifts bringing scrap metal to and from the structure, and providing year-round cover to protect the scrap metal from the elements, particularly the weather commonly associated with the winter season in the Western New York geographic area, including shielding the scrap metal form rain and snow to protect the scrap metal's integrity and to prevent potential environmental issues caused by water runoff from the scrap metal onto the surrounding ground.  The structure would feature a steel truss skeleton, open at both ends, with an industrial strength covering sufficient to bear snow and wind loads without ripping, tearing, buckling, leaking, or otherwise failing.  Pavilion was also to erect the structure at the Frewsberg facility.

Defendant Zehn Burhan Uzman ("Uzman"), a professional engineer licensed in New York State, was retained by Pavilion as the engineer of record for the structure.  In his role as engineer of record, Uzman was responsible for reviewing Pavilion's engineering drawings for the structure to ensure the drawings complied with all applicable New York State engineering codes and otherwise reflected engineering and design standards to ensure the manufacture, erection, and completion of a structurally sound and safe lightweight building, and was "the last line of protection" for Plaintiff who relied on Uzman's professional review to ensure the structure's plan met building and engineering standards.  Amended Complaint ¶¶ 83-84.  Also retained by Pavilion in connection with the structure were Defendants Douglas Barrett ("Barrett"), another New York State licensed professional engineer, and Barrett's business Barrett Crane Design & Engineering ("Barrett Crane") ("the Barrett Defendants").  The Barrett Defendants were retained to design the structure, and to prepare engineering drawings for the

structure that complied with all applicable New York State engineering codes.

The Master Agreement states "the term Contractor [is] to include any applicable subcontractor."  Master Agreement at 1.  Plaintiff alleges Barrett, Barrett Crane, and Uzman were subcontractors to Pavilion with regard to the structure and, thus, are subject to the terms of the Master Agreement.  Amended Complaint ¶ 37.

There were two amendments to the Master Agreement.  The "First Amendment to Master Agreement Between and Among Keywell LLC, Shoff Construction LLC and Pavilion Installation and Building Systems Ltd" ("First Amendment"),[3] signed by representatives of Keywell, Pavilion, and Shoff Construction LLC ("Shoff"),[4] is dated June 10, 2008, and provides for Shoff to design and provide certain connecting plates, affix the connecting plates by steel expanding bolts and epoxy atop anchor bolts located on the structure's foundation pillars, as well as supply a work crew to construct the structure's foundation, including the foundation pillars.  First Amendment, ¶ 1.  Shoff was also to warrant the connecting plates and its services on the structure for 18 years, and to test the connecting plates to confirm they were suitable to anchor the steel trusses to the structure's foundation.  *Id*.  Pavilion was to deliver to the structure's construction site three rolls of the industrial strength cover fabric and all required standard, ancillary parts and components, and to provide a work crew of at least four people to erect the structure.  *Id*. ¶ 2.  Pavilion was to warranty its work on the structure for 18 years.  *Id*.  Keywell was to have no responsibility for engineering or erecting the

---

[3] A copy of the First Amendment is attached as Exhibit B to the Amended Complaint.

[4] Shoff is not a party to this action.

structure, having contracted with Shoff for the foundation's construction, and with Pavilion to engineer, design and erect the structure. *Id.* ¶ 3. All expenses incurred in connection with the structure were to be paid by Keywell to Pavilion.[5]

The "Second Amendment to Master Agreement Between and Among Keywell L.L.C., Pavilion Building Installation Systems Ltd. and Industrial Welding Company" ("Second Amendment"),[6] signed by representatives of Keywell, Pavilion, and Industrial Welding Company ("Industrial Welding"),[7] is dated October 28, 2008, provides for Pavilion to procure and deliver to Keywell's Frewsberg facility a replacement tarp with two doors, as well as associated materials necessary to complete the structure's fabric shell covering. Second Amendment ¶¶ 1 and 2. Industrial Welding was to complete the erection of the structure, including the proper placement of the replacement tarp, for which Pavilion was to provide all necessary engineering services and oversight. *Id.* ¶ 3. despite the payment provisions set forth in the First Amendment, the Second Amendment further provides that "Keywell currently holds $ 50,000 in funds to be applied for the final payment" for the structure. *Id.* ¶ 4. Upon the structure's completion,

---

[5] Although the record is devoid of any mention of the total price of the structure, the First Amendment mentions three payments Keywell was to make to Pavilion "for the remainder of the product," including $ 54,970.50 within 10 days of the execution of the First Amendment, $ 27,485.25 or 15% of the total price upon completion of the erection of the structure's steel trusses, and the balance of $ 9,161.75, or 5% of the total price upon completion of the structure. First Amendment ¶ 3. From these numbers, the undersigned extrapolates that the total price of the structure was $ 183,235 ($ 9,161.75 X 20 = $ 183,235). That the first of the three listed payments is 30% of the total price ($ 183,235 X 30% = $ 54,970.50), the second listed payment is 15% of the total price, and the final listed payment is 5% of the total price, strongly implies that Keywell paid 50% of the total price prior to the execution of the First Amendment, although the record contains no information as to when and to whom such payment was made.

[6] A copy of the Second Amendment is attached as Exhibit C to the Master Agreement.

[7] Industrial Welding is not a party to this action.

Keywell was to pay $ 40,000 to Industrial Welding, and $ 12,500 to Pavilion.[8]  *Id.*

The structure was eventually completed in November 2008.  Some time after its completion, the structure exhibited a number of deficiencies, requiring Plaintiff to cease using the structure.  In particular, although the structure is located in on open terrain close to Lakes Chautauqua and Erie, and needed to withstand substantial wind gusts and heavy snowfalls, the structure allegedly was "under-designed" for snow load by 30% and for wind load by 46%.  Amended Complaint ¶¶  44-49.  According to Plaintiff, the engineering work papers prepared by Pavilion and the subcontractors "reflect no calculations for the force of the industrial fabric on the steel truss frame resulting from snow loads and wind loads," *id*. ¶ 50, nor "calculations relating to the force of the industrial fabric on the end trusses for the Structure, where the force from the wind, snow, and stretching and pulling of fabric would be greatest."  *Id*. ¶ 51.  Also improperly designed, according to Plaintiff, were the weld points where the steel plates forming the arch of the trusses connected, and the weld tension.  *Id*. ¶¶ 52-53.  The heavy industrial fabric for the structure's cover places horizontal and vertical stress on the trusses.  *Id*. ¶ 55.  Furthermore, the structure's bracing for the trusses is insufficient, with the braces placed too far apart.  *Id*. ¶¶ 56-57.  As a result of these alleged defects, the trusses were unable to withstand the force of the fabric and became susceptible to cracking, bowing and breaking with the added snow and wind loads, with the fabric tearing and the steel trusses cracking at the weld joints.  *Id*. ¶¶ 58-61.  The structure's two end

---

[8]  Not explained in the Second Amendment is why a replacement tarp was needed or the apparent discrepancy between the $ 50,000 held by Keywell, and the total of $ 52,5000 to be paid to Industrial Welding and Pavilion upon the structure's completion, nor whether the payment schedule set forth in ¶ 3 of the First Amendment was still valid.

trusses snapped at their respective peaks, resulting in the steel beams being detached

and the trusses unsupported.  *Id*. ¶ 62.  When Keywell complained to Pavilion about the

inadequacy of the structure throughout the winter and spring of 2009, Pavilion and its

subcontractors made no effort to correct the defects, but advised Keywell to apply duct

tape to the areas where the fabric cover was torn.  *Id*. ¶¶ 63-64.  Keywell eventually had

to remove the cover to prevent further bowing, bending, and breaking of the trusses, the

remaining steel frame is unstable and allegedly presents a dangerous condition

necessitating its complete dismantling, such that the structure is a total loss and must

be replaced pursuant to the warranties contained in the Master Agreement and the First

and Second Amendments.  *Id*. ¶¶ 65-70.


## DISCUSSION

Defendant Uzman seeks partial judgment on the pleadings pursuant to

Fed.R.Civ.P. 12(c), dismissing the First Claim insofar as it asserts breach of contract

against Uzman based on the Master Agreement, arguing that Uzman is not a

subcontractor to the Master Agreement because he never signed or assented to the

terms of the Master Agreement, Uzman's Memorandum at 7-13 and that Uzman never

received any consideration in exchange for executing the Master Agreement.  *Id*.  at 14-

15.  Plaintiff argues in opposition that the pleadings establish a material issue of fact

regarding whether Uzman assented to the terms of the Master Agreement precluding

judgment on the pleadings.  Plaintiff's Response at 5-8.  Alternatively, Plaintiff

maintains Uzman's motion should be converted into a motion for summary judgment

based on consideration of material outside the pleadings, and Plaintiff should then be

10

granted time to conduct discovery on the issue. *Id*. at 8-10.  In further support of his

motion, Uzman asserts that a judicial admission made by another party to this action in

responding to the Amended Complaint is insufficient to raise a question as to whether

Uzman is bound to the terms of the Master Agreement, Uzman's Reply at 1-7, there is

no need to convert the motion to summary judgment, *id.* at 8-9, and Plaintiff has failed

to address Uzman's assertion that the lack of any consideration renders the Master

Agreement unenforceable against Uzman.  *Id*. at 10.

The same analysis applicable to a Fed.R.Civ.P. 12(b)(6) motion to dismiss

applies to a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings.  *Sheppard v.*

*Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).  In particular, "'[o]n a motion to dismiss or

for judgment on the pleadings, [the court] must accept all allegations in the complaint as

true and draw all inferences in the non-moving party's favor.'"  *LaFaro v. New York*

*Cardiothoracic Group, PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (quoting *Miller v.*

*Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (bracketed material

added and additional quotation omitted).  On a motion to dismiss under Rule 12(b), the

court looks to the four corners of the complaint and is required to accept the plaintiff's

allegations as true and to construe those allegations in the light most favorable to the

plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d

50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as

true all factual allegations in the complaint, and draw all reasonable inferences in the

plaintiff's favor).  "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, __; 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Generally, a motion for judgment on the pleadings must be based upon the pleadings, and not on additional evidence submitted by any party. *See Sira v. Morton*, 380 F.3d 57, 66-67 (2d Cir. 2004) (observing that where moving party submits material outside the pleadings in support of motion for judgment on the pleadings, the motion should be converted to a motion for summary judgment). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira*, 380 F.3d at 67 (citing cases and Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")). Where, however, a movant relies on papers outside the pleadings which have not been incorporated by reference, and such papers are relied on by the court in considering the motion, the motion must be converted to one for summary judgment. *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) ("a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings. . . .").

First addressed in the instant case is Plaintiff's request that Uzman's motion seeking judgment on the pleadings be converted to summary judgment based on Uzman's reliance in support of his motion on Plaintiff's response to a single interrogatory posed by Uzman in Uzman's First Set of Interrogatories ("Plaintiff's Responses to Uzman's Interrogatories").[9] Plaintiff's Response at 9 (citing Lauricella

---

[9] A copy of Plaintiff's Responses to Uzman's Interrogatories is filed as Uzman's Exh. O.

Affirmation ¶ 29 (asserting Plaintiff admitted Plaintiff never had any oral communications with Uzman regarding the structure and citing Uzman's Exh. O, at p. 4 (Plaintiff's Responses to Uzman's Interrogatories, Interrogatory No. 1)).  The court, however, does not rely on this interrogatory response to resolve the motion.  As such, Plaintiff's Responses to Uzman's Interrogatories are excluded from the court's consideration, obviating the need to convert Uzman's motion to one for summary judgment.  Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to *and not excluded by the court*, the motion must be treated as one for summary judgment under Rule 56." (italics added)).  The determination that there is no need to convert the instant motion to one for summary judgment negates Plaintiff's alternative request, Plaintiff's Response at 8-10, pursuant to Rule 56(d), for discovery to enable Plaintiff to present facts necessary to oppose summary judgment.

Because Uzman is not a signatory to the Master Agreement, resolution of Uzman's motion seeking dismissal of the First Claim alleging breach of contract turns on the interpretation of the Master Agreement's provision that "the term Contractor [is] to include any applicable subcontractor."  Master Agreement at 1.  Plaintiff construes this language as establishing the Master Agreement defines the term "Contractor" to include any subcontractor who worked on the structure in any capacity.  Plaintiff's Response at 6.  Uzman maintains the interpretation urged by Plaintiff is too broad and fails to establish the requisite privity between Plaintiff and Uzman to support Plaintiff's breach of contract claim against Uzman.  Uzman's Reply at 1-6.

In New York,[10] privity is essential to a contract claim. *LaBarte v. Seneca Resources Corp.*, 728 N.Y.S.2d 618, 620 (4th Dept. 2001) ("Plaintiffs may not maintain a cause of action for breach of contract against those parties with whom they were not in privity."); *Logan-Baldwin v. L.S.M. General Contractors, Inc.*, 914 N.Y.S.2d 617, 619 (N.Y. Sup. Ct., Monroe Cnty. 2011) (citing *Seaver v. Ransom*, 120 N.E. 639 (1918); *Leonard v. Gateway II, LLC*, 890 N.Y.S.2d 1st Dept. 2009); and *CDJ Builders Corp. v. Hudson Group Constr. Corp.*, 889 N.Y.S.2d 64 (2d Dept. 2009)). Generally, "a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Crabtree v. Tristar Automotive Group, Inc.*, 776 F.Supp. 155, 166 (S.D.N.Y. 1991).

In the instant case, the only signatories to the Master Agreement are representatives of Plaintiff Keywell and Defendant Pavilion, based on their execution of the Master Agreement on September 27, 2007, representatives of Shoff based on the execution of the First Amendment on June 10, 2008, and Industrial welding, based on of the Second Amendment on October 28, 2008. Both the First and Second Amendments incorporate by reference the Master Agreement. First Amendment at 1(". . . Keywell, Shoff and Pavilion agree that the Master Agreement, the terms of which are incorporated by reference, shall be amended as follows: . . . ."); Second Amendment at 1 (" . . . Keywell, Pavilion and [Industrial Welding] agree that the First Master Agreement, the terms of which are incorporated herein by reference, shall be amended as follows: . . . ."). Despite the subsequent execution of the First and Second

---

[10] The Master Agreement provides for its interpretation pursuant to New York law. Master Agreement § 11. The parties do not contend otherwise.

Amendments, there has never been a written contract between executed between

Plaintiff and Uzman.  Nor is there any evidence of an oral contract between Plaintiff and

Uzman.  Nevertheless, Plaintiff argues that insofar as Uzman performed engineering

work on the plans for the structure pursuant to a contract between Uzman and Pavilion,

Uzman is a subcontractor on the structure, and thus consented to and is bound by the

terms of the Master Agreement.  Plaintiff's Response at 5-7.

New York law does recognize that, even in the absence of a formal signed

contract, the "functional equivalent of privity" may exist in construction situations under

certain circumstances when a project's owner and a subcontractor engaged in direct

dealings.  *RLI Insurance Company v. King Sha Group*, 598 F.Supp.2d 438, 443-44

(S.D.N.Y. 2009).  Such circumstances include, *inter alia*, (1) where "the prime contract

provided that the subcontractors would assume all the obligations and responsibilities"

of the contractor; (2) the project owner and subcontractor had direct dealings such that

the subcontractor knew the work being performed was for the benefit of the owner; (3)

the project owner assumed payment obligations toward the subcontractor, and (4) the

project owner is the "foreseeable and intended beneficiary" of the agreement between

the general contractor and the subcontractor.  *Id*. (internal citations omitted).  In

contrast, contractual privity between a project owner and the subcontractor has not

been found where the subcontractor was paid by and exclusively dealt with the general

contractor, rather than the owner.  *Bubonia Holding Corp. v. Jeckel*, 592 N.Y.S.2d 499,

500 (3d Dep't. 1993).  In the instant case, accepting all allegations in the Amended

Complaint as true, and drawing all inferences from the pleadings in favor of Plaintiff, the

nonmovant, as required, *LaFaro*, 570 F.3d at 475, demonstrates that the Amended

Compliant alleges sufficient facts which, if true, "'state a claim to relief that is plausible on its face'" so as to avoid judgment on the pleadings on the breach of contract claim against Uzman.  *Ashcroft*, 129 S.Ct. 1937, 1949.

In particular, the Master Agreement does define "the term Contractor to include <u>any</u> applicable subcontractor. . . ."  Master Agreement at 1 (underlining added).  Plaintiff alleges that Uzman, Barrett and Barrett Crane were subcontractors to, and thus subject to the terms of the Master Agreement.  Amended Complaint ¶ 37.  Although Uzman, in his answer to the Amended Complaint, denied this allegation, Uzman's Answer ¶ 37, the court is not permitted to accept Uzman's averments over Plaintiff's allegations on a motion for judgment on the pleadings.  *Goldstein*, 516 F.3d at 56.  Similarly, accepting as true Uzman's assertions, Uzman's Memorandum at 7-13, that he never communicated any consent or intent to assent to being bound by the terms of the Master Agreement, would require construing the allegations of the Amended Complaint against Plaintiff, which is not permitted on a motion for judgment on the pleadings.  *Id*. Whether Plaintiff can eventually provide evidence to support the breach of contract claim against Uzman must await the completion of discovery and further motion practice.[11]

Nor is there any merit to Uzman's argument, Uzman's Memorandum at 10, that any contractual relationship between Uzman and Plaintiff is void for want of any consideration between Uzman and Plaintiff.  In particular, any consideration Uzman

---

[11] The court notes although Uzman denies he is a subcontractor under the Master Agreement, Uzman's Answer ¶ 57, Uzman that he is a Professional Engineer in New York, and "that he provided certain services regarding the project."  *Id*. ¶ 82.  Significantly, Uzman does not argue that a professional engineer can never be subjected to contractual liability.

received from Pavilion with regard to the structure would, if privity of contract were ultimately established as existing between Plaintiff and Uzman, serves as consideration with regard to the Master Agreement.  *See Nabisco Brands, Inc. v. General Restoration Co., Inc.*, 679 F.Supp. 264, 266 (W.D.N.Y. 1988) (recognizing genuine issue of fact existed as to whether subcontractor was in privity with owner where, *inter alia*, although payment obligations under contract were to be paid by project owner to subcontractor, through general contractor, subcontractor was to receive 90% of the total payment obligations).

Accordingly, Uzman's motion seeking partial judgment on the pleadings of the First Claim asserting breach of contract should be DENIED.


## CONCLUSION

Based on the foregoing, Defendant Uzman's motion for partial judgment on the pleadings (Doc. No. 91), should be DENIED.


Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        February 22, 2012
              Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 22, 2012
                   Buffalo, New York