UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KELLY BEAUDIN STAPLETON, solely in her
capacity as trustee of the SGK Ventures, LLC
Liquidating Trust,

                        Plaintiff,

        v.                                                      **DECISION AND ORDER**
                                                                09-CV-934S
PAVILION BUILDING INSTALLATION
SYSTEMS, LTD., ZEHN BURHAN UZMAN, LI
ZHI CAO, BARRETT CRANE DESIGN &
ENGINEERING, and DOUGLAS BARRETT,

                        Defendants.

## I. INTRODUCTION

Plaintiff Kelly Beaudin Stapleton, in her capacity as Trustee of the SGK Ventures,

LLC Liquidating Trust ("Plaintiff"), brings this diversity action for breach of contract and

professional negligence against Defendants Pavilion Building Installation Systems, Ltd.

("Pavilion"), Li Zhi Cao ("Cao"), Douglas Barrett and his company, Barrett Crane Design

& Engineering (together, "Barrett"), and Zehn Burham Uzman ("Uzman").[1]   Default

judgments were entered against Defendants Pavilion and Cao on April 22, 2014.  (See

Docket No. 149.)   The remaining defendants, Uzman and Barrett, now move for

summary judgment on the claims against them.  For the reasons discussed below,

Uzman and Barrett's motions for summary judgment are granted and the claims against

them are dismissed.

---

[1] Answers containing crossclaims against co-defendants for indemnification and contribution were filed by
Uzman (Docket. No. 76), Pavilion (Docket No. 77), and by Barrett (Docket No. 80). Pavilion's answer and
cross-claim were struck as part of the default judgment against it. (See Docket No. 133.)

## II. BACKGROUND[2]

Plaintiff brings this action on behalf of Keywell L.L.C. ("Keywell"), a now-bankrupt and defunct Illinois limited liability company.[3]   During the relevant period, Keywell operated a scrap metal recycling business throughout the United States, and sought a permanent, lightweight building to cover certain scrap metal and thereby reduce pollutant run-off at its facility in Frewsberg, NY.   Defendant Pavilion is a Canadian company engaged in the design, marketing, and sale of lightweight structures.   On September 27, 2007, representatives from Keywell and Pavilion executed a written contract (the "Master Agreement") providing that Pavilion would design, manufacture, and erect such a structure for Keywell in Frewsberg.

Uzman, a professional engineer licensed in New York State, was retained by Pavilion as the engineer of record for the structure and was responsible for reviewing engineering drawings to ensure they complied with applicable New York State code. Pavilion also retained Barrett, another New York State licensed professional engineer, to review the engineering drawings.   Uzman and Barrett both reviewed the plans, and both were aware that they reflected a structure to be built for Keywell in Frewsberg. However, neither had any contact with Keywell, nor were they paid by Keywell.   Instead, all expenses incurred in connection with the structure were to be paid by Keywell to Pavilion, and Pavilion paid all subcontractors (including Barrett and Uzman) directly. Barrett and Uzman worked for Pavilion as independent contractors and seem to have had only oral agreements with Pavilion for their services.   They were not signatories to the Master Agreement, nor are they mentioned in that document.   However, among its

---

[2] Facts are undisputed unless otherwise noted.
[3] Following Keywell's bankruptcy, Ms. Beaudin Stapleton was substituted as Plaintiff.   (See Docket No. 167.)

other terms, the Master Agreement states "the term Contractor"—referring to Pavilion—"[is] to include any applicable subcontractor."

The structure was completed in November 2008. Plaintiff alleges that the structure exhibited significant structural flaws and was under-designed for the substantial wind gusts and heavy snowfalls common in Frewsberg. Keywell notified Pavilion of cracking in the structure and tears in the fabric covering that occurred after the building was complete, but Pavilion failed to correct the defects. Keywell eventually removed the fabric covering from structure, rendering it unable to perform its intended use. On October 29, 2009, Keywell commenced this action, alleging the structure was inadequately designed and was unable to withstand the elements, became damaged, failed to perform as anticipated, and is a total loss.[4] Keywell seeks more than $300,000 in damages from Barrett and Uzman, which include the purchase price of the structure, as well as the price of removal.

### III. DISCUSSION

In its Amended Complaint, Plaintiff claims that Barrett and Uzman are liable for breach of the Master Agreement and for professional negligence. (See Docket No. 73.) Barrett and Uzman move for summary judgment and dismissal of both counts arguing, in essence, that they were not in privity with Plaintiff and therefore cannot be liable on these claims.

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v.

---

[4] Barrett and Uzman contend that the structure as built does not reflect the drawings they advised on and which Uzman signed, because it lacked "end-walls" that they contend were crucial for stability. Plaintiff contends that the structure would have been inadequate with or without the end-walls.

Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010).  A court's function on a summary

judgment motion "is not to resolve disputed questions of fact but only to determine

whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at

545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91

L. Ed. 2d 202 (1986)).  "A dispute regarding a material fact is genuine 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock

v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2003) cert. denied, 540 U.S. 811 (2003)

(quoting Anderson, 477 U.S. at 248).  A court must also "construe the facts in the light

most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp.,

352 F.3d 775, 780 (2d Cir. 2003).

**A.      Breach of Contract**

Under New York law, a party alleging a breach of contract must establish (1) the

existence of a contract; (2) performance of the contract by one party; (3) breach by the

other party; and (4) resulting damages. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d

522, 525 (2d Cir. 1994).  Uzman and Barrett dispute the first element, arguing that the

claim fails as a matter of law because they were not parties to the Master Agreement.

"[A]bsent a contractual relationship there can be no contractual remedy." Suffolk Cnty.

v. Long Island Lighting Co., 728 F.2d 52, 63 (2d Cir. 1984).  Such a relationship exists if

the plaintiff is in privity of contract with the defendant or is a third-party beneficiary of the

contract. Hillside Metro Associates, LLC v. JPMorgan Chase Bank, Nat. Ass'n, 747

F.3d 44, 49 (2d Cir. 2014), cert. denied, 135 S. Ct. 1399, 191 L. Ed. 2d 360 (2015).

Plaintiff acknowledges that Barrett and Uzman were not parties to the Master

Agreement, but argues that Barrett and Uzman were in the "functional equivalent of privity" or, in the alternative, that Keywell was a third party beneficiary to the contracts Uzman and Barrett each had with Pavilion.  For the reasons discussed below, this Court agrees with Uzman and Barrett that they were not in privity with Keywell under the Master Agreement.  Further, although Keywell may have been a third-party beneficiary of Uzman and Barrett's contracts with Pavilion, the breach of contract claim must still be dismissed because Plaintiff failed to plead such a theory of liability in the Amended Complaint.

"It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless [he] has thereafter assumed or been assigned the contract." Crabtree v. Tristar Auto. Group, Inc., 776 F. Supp. 155, 166 (S.D.N.Y. 1991).  New York law permits a limited exception to this rule for non-signatories who are in the "functional equivalent of privity." In re Cavalry Constr., Inc., No. 07-22707 (RDD), 2013 WL 5682741, at *3-4 (Bankr. S.D.N.Y. Oct. 18, 2013) (noting that the exception is "well established" in tort but recognizing that "several cases have applied the doctrine to breach of contract claims").  That limited exception is sometimes applicable in cases similar to this, where the owner of a property sues an engineer, architect, or some other subcontractor with whom it had no direct contractual relationship. See, e.g., Aktas v. JMC Dev. Co., Inc., 877 F. Supp. 2d 1, 27 (N.D.N.Y. 2012); aff'd, 563 F. App'x 79 (2d Cir. 2014) ("Courts in New York have routinely, 'refused to dismiss breach of contract causes of action asserted by property owners against subcontractors who performed construction services on their property'." (quoting Logan-Baldwin v. L.S.M. Gen. Contractors, Inc., 94 A.D.3d 1466, 942 N.Y.S.2d 718,

721 (4th Dep't 2012))),; <u>see also</u> <u>Town of Oyster Bay v. Lizza Indus., Inc.</u>, 22 N.Y.3d

1024, 1030, 981 N.Y.S.2d 643 (N.Y. 2013) ("Even if the plaintiff is not a party to the

underlying construction contract, the claim may accrue . . . where the plaintiff is not a

'stranger to the contract,' and the relationship between the plaintiff and the defendant is

the 'functional equivalent of privity.'" (quoting <u>City Sch. Dist. of City of Newburgh v.</u>

<u>Hugh Stubbins & Assocs., Inc.,</u> 85 N.Y.2d 535, 538-39, 626 N.Y.S.2d 741, 650 N.E.2d

399 (N.Y. 1995))).  It is properly applied where, "despite the lack of a formal contract[, . .

. ] an owner and subcontractor engage more directly."[5]  <u>Greg Beeche Logistics, LLC v.</u>

<u>Skanska USA Bldg., Inc.,</u> No. 12-CV-11121-DJC, 2015 WL 5156553, at *5 (D. Mass.

Sept. 2, 2015) (applying New York law, internal citation omitted).   Under those

circumstances, Courts have found both the functional equivalence of privity and third

party beneficiary status for the owner of the property.  <u>See, e.g.</u>, <u>Aktas</u>, 877 F. Supp. 2d

at 27; <u>Town of Oyster Bay</u>, 22 N.Y.3d at 1030.

However, the exception appears to apply only in one direction:  a property owner

may sue a subcontractor, but a subcontractor is generally not found to be in privity or a

third party beneficiary to a property owner.  <u>See</u> <u>Brownell Steel, Inc. v. Great Am. Ins.</u>

<u>Co.</u>, 28 A.D.3d 842, 843, 813 N.Y.S.2d 550, 551 (3d Dep't 2006) (holding that surety

could assert general contractor's claim against subcontractor because the chain of

agreements from the general contractor down to the subcontractor provided the

functional equivalent of privity, but noting that "[c]onversely, a subcontractor is not

normally a third-party beneficiary of the contract between the owner and the general

contractor"); <u>R.H. Sanbar Projects, Inc. v. Gruzen P'ship</u>, 538 N.Y.S.2d 532, 534 (1st

Dep't 1989) (concluding that cases barring subcontractors from suing owners for

---

[5] A direct relationship has not been alleged between Barrett or Uzman and Keywell.

payment based on an agreement between the owner and the general contractor are "inapposite" because "[h]ere, to the contrary, it is the owner claiming to be a third-party beneficiary").   This is because the privity or beneficiary status flows to the owner through the agreement between the contractor and subcontractor, rather than through the agreement between the owner and the contractor.  See In re Cavalry Constr., Inc., 2013 WL 5682741, at *5.

Accordingly, in order for Keywell or its successor to successfully state a claim for breach of contract against Barrett or Uzman, it must show it is in privity with the subcontract entered into between Barrett or Uzman and Pavilion.  However, the Breach of Contract claim in Plaintiff's Amended Complaint focuses solely on the Master Agreement between Keywell and Pavilion, and makes no mention of Uzman or Barrett's subcontracts with Pavilion.  Further, Plaintiff's only evidence in support of her argument that Uzman and Barrett are bound by the Master Agreement is the fact that "Contractor" is defined in that contract to include all subcontractors.  However, this clause cannot be enforced against Uzman and Barrett without additional evidence of privity.  See CDJ Builders Corp. v. Hudson Grp. Const. Corp., 67 A.D.3d 720, 889 N.Y.S.2d 64, 65 (2d Dep't 2009) ("Liability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties." (quoting Hamlet at Willow Creek Dev. Co., LLC v. Ne. Land Dev. Corp., 64 A.D.3d 85, 878 N.Y.S.2d 97, 112 (2d Dep't 2009))) Courts have found privity to flow from the prime contract between a property owner and a general contractor—such as the Master Agreement—but only where the subcontract also specifically referred to and incorporated the prime contract.  See Brownell Steel, Inc., 28 A.D.3d at 843, 813 N.Y.S.2d at 551.  For example, in Brownell, a third-party

beneficiary relationship was established because the court found that the agreement between the contractor and subcontractor specifically identified the party for whom the work was being performed, incorporated the terms of the prime contract into the subcontract, and provided an assumption of the responsibilities and liabilities from the prime contract into the subcontract. Id. No such clear intention that the work arising out of the subcontract was to be performed for the Pavilion's benefit has been alleged here.

Although Plaintiff argues in its opposition papers that it is the third-party beneficiary of Uzman and Barrett's subcontracts with Pavilion, this is a new theory of liability, one which is entirely absent from the Amended Complaint. "An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." Lyman v. CSX Transp., Inc., 364 Fed. App'x 699, 701 (2d Cir. 2010) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1183, at 23 n. 9 (3d ed. 2004)); Brandon v. City of N.Y., 705 F.Supp.2d 261, 278 (S.D.N.Y. 2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment."); Heletsi v. Lufthansa German Airlines, Inc., No. 99CV4793(SJ), 2001 WL 1646518, at *1 n. 1 (E.D.N.Y. Dec. 18, 2001) ("A party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment."). Plaintiff's discovery did not reveal an intention to make claim with respect to Barrett or Uzman's contract with Pavilion, and Plaintiff's opposition to Uzman's earlier Motion to Dismiss argued only that Uzman was a party to the Master Agreement and had breached that contract. (See Docket No. 96 at 1-2.) If Plaintiff had pled a breach of Uzman and Barrett's contracts with Pavilion, such a claim may have been successful. This Court cannot speculate however, as the record has insufficient

evidence on that point.  See In re Cavalry Constr., Inc., 2013 WL 5682741, at *5 ("whether it's a functional equivalent [of privity] analysis or a third-party beneficiary analysis, it has to state what the terms of the contract are, and there's no evidence in the record as to what those terms are" (alterations in original)).

Accordingly, this Court must dismiss the breach of contract claim.  There is no functional equivalent of privity nor a third-party beneficiary relationship created by the Master Agreement, and Plaintiff does not plead a breach of Barrett or Uzman's subcontracts.

## B.    Professional Negligence and Negligent Representation

Plaintiff next alleges professional negligence against Barrett and Uzman.  Barrett and Uzman have both moved for summary judgment, arguing that any negligence claim is barred by the economic loss doctrine because the parties were not in privity.

New York's economic loss doctrine generally bars recovery in tort for purely economic losses caused by a defendant's negligence.  See, e.g., Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y., 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010).  A court determining whether the economic loss doctrine applies "should consider the nature of the defect, the injury, the manner in which the injury occurred, and the damages sought."  Hodgson, Russ, Andrews, Woods & Goodyear, LLP v. Isolatek Intern. Corp., 300 A.D.2d 1051, 1052, 752 N.Y.S.2d 767, 769 (4th Dep't. 2002). "Critical to a determination of whether a tort claim is barred by the economic loss doctrine is whether damages are sought for the failure of the product to perform its intended purpose, in which case recovery is barred by the economic loss doctrine, or for direct and consequential damages caused by a defective and unsafe product."  Praxair,

Inc. v. General Insulation Co., 611 F. Supp. 2d 318, 326 (W.D.N.Y. 2009) (citing Hodgson, Russ, Andrews, 300 A.D.2d at 1052-53, 752 N.Y.S.2d at 769).   Thus, for example, if the structure at issue had fallen and injured a worker or caused damage to one of Keywell's vehicles, then recovery might be appropriate.   However, because Plaintiff seeks only damages to the structure itself arising from the alleged faulty design and construction, the economic loss doctrine bars recovery under the theory of professional negligence.

Plaintiff argues the economic loss doctrine does not apply in professional negligence cases.  However, as is apparent in the cases cited by Plaintiff, this exception is relevant only where a valid contract exists between the plaintiff and the allegedly negligent professional.   See, e.g., Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 18 (2d Cir. 2000); Valentini v. Citigroup, Inc., 837 F. Supp. 2d 304, 328 (S.D.N.Y. 2011); Nebraskaland, Inc. v. Sunoco, Inc., No. 10-1091, 2011 WL 6131313, at *4 (E.D.N.Y. July 13, 2011).  "The rule which bars recovery for economic losses *in the absence of privity* as applied to actions against architects or engineers is . . . settled as a matter of New York law."  Key Int'l Mfg., Inc. v. Morse/Diesel, Inc., 142 A.D.2d 448, 453, 536 N.Y.S.2d 792 (2d Dep't 1988) (emphasis added).  Having found that there is no "functional equivalent of privity" under the Master Agreement so as to survive a breach of contract claim, this Court finds that there is also no basis for a professional negligence claim under that document.

A second, more limited, exception to New York's barrier against recovery of economic loss exists for claims of negligent misrepresentation, a cause of action which

Plaintiff does not explicitly plead.[6]   Under this theory, privity remains a requirement: "before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity."  Parrott v. Coopers & Lybrand, L.L.P., 95 N.Y.2d 479, 483, 718 N.Y.S.2d 709, 741 N.E.2d 506 (N.Y. 2000) (citation omitted).   The Court of Appeals determined that a relationship will be "so close as to approach that of privity" if the plaintiff can demonstrate:

> (1) awareness that the reports were to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant's understanding of their reliance.

Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson, 73 N.Y.2d 417, 425, 539 N.E.2d 91, 95 (N.Y. 1989) (citing Credit Alliance Corp. v. Arthur Andersen & Co., 65 N.Y.2d 536, 551, 483 N.E.2d 110, 118, amended, 66 N.Y.2d 812, 489 N.E.2d 249 (N.Y. 1985)).   These three criteria, taken jointly, require Plaintiff to demonstrate "a clearly defined set of circumstances which bespeak a close relationship premised on knowing

---

[6] It may seem contradictory to evaluate negligent representation after rejecting Plaintiff's third-party beneficiary theory above.  The difference lies in the facts pled by Plaintiff rather than her legal theories.  The facts pled in her breach of contract claim relate only to the Master Agreement, and not to a breach of the agreements between Barrett and Pavilion, or Uzman and Pavilion.  Not having established the terms of these contracts, Plaintiff could not then allege that she was an intended beneficiary or that there had been a breach.  However, the facts alleged with respect to her professional negligence claim are essentially those that might have supported a negligent misrepresentation claim.  See Pioneer Commercial Funding Corp. v. United Airlines, Inc., 122 B.R. 871, 887 (S.D.N.Y. 1991) ("[T]he Federal Rules of Civil Procedure only require the pleading of a claim and the specific label given to a cause of action is unimportant.").  Accordingly, this Court evaluates liability with respect to both negligence theories based on the facts as alleged in the Amended Complaint and as discussed in the motion papers.  See Newman v. Silver, 713 F.2d 14, 15 n. 1 (2d Cir. 1983) (sustaining district court's application of legal theory not expressly raised in the complaint because factual basis for theory had been pled); see also Ocaso, S.A., Compania de Seguros y Reaseguros v. P.R. Mar. Shipping Auth., 915 F. Supp. 1244, 1253 (D.P.R. 1996) ("[E]ven though the Court will liberally construe the substance of the information provided in the complaint and in particular situations may not require that the specific legal theory be identified, at least some notion of the grounds justifying the remedies sought in the proceedings must appear.").

reliance." Parrott, 95 N.Y.2d at 484, 741 N.E.2d at 508; see also MS P'ship v. Wal-Mart Stores, Inc., 294 A.D.2d 853, 741 N.Y.S.2d 793, 794 (4th Dep't 2002) ("For defendant to be liable, reliance by plaintiff upon the representation must be the end and aim of the transaction, rather than an indirect or collateral consequence of it." (internal citation and punctuation omitted)).

As it is a limited exception to the general rule against recovery of economic loss, the tripartite standard is applied strictly by New York courts, and a plaintiff pursuing a negligent misrepresentation claim faces a "heavy burden." Sec. Inv'r Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 73 (2d Cir. 2000); see also Sec. Pac. Bus. Credit, Inc. v. Peat Marwick Main & Co., 79 N.Y.2d 695, 702, 586 N.Y.S.2d 87, 597 N.E.2d 1080 (N.Y. 1992) (professionals may "incur liability to injured third parties who rely on their work," but only "[i]n 'carefully circumscribed' instances" (citation omitted)); Sykes v. RFD Third Ave. 1 Assocs., LLC, 67 A.D.3d 162, 165, 884 N.Y.S.2d 745 (1st Dep't 2009), aff'd, 15 N.Y.3d 370, 938 N.E.2d 325 (N.Y. 2010) ("The New York Court of Appeals takes a rather cautious approach to determining whether a relationship necessary to support a claim for negligent misrepresentation exists.").   Not only is recovery of economic loss unavailable solely on the basis that a plaintiff was "foreseeable," but the New York Court of Appeals has "'rejected even a somewhat narrower rule that would permit recovery where the reliant party or class of parties was actually known or foreseen' but the individual defendant's conduct did not link it to that third party." Parrott, 95 N.Y.2d at 485, 718 N.Y.S.2d 709, 741 N.E.2d 506 (quoting Ossining, 73 N.Y.2d at 425, 539 N.E.2d 91).   Therefore, "[a]n allegation that the defendant participated in the design, construction, or supervision of construction is not enough to

give rise to a duty of care; instead, the plaintiff must show that the functional equivalent of privity of contract arose between plaintiff and defendant *as a result of the defendant's actions*." In re Sept. 11 Prop. Damage & Bus. Loss Litig., 481 F. Supp. 2d 253, 260 (S.D.N.Y. 2007) (emphasis added).

While there are disputed issues of facts as to the awareness and reliance elements of the tripartite test, it is undisputed that there was no contact between either Barrett or Uzman and Keywell.  Both Barrett and Uzman dealt only with Pavilion, were paid by Pavilion, and had agreements only with Pavilion.  Although both Barrett and Uzman were aware, or are alleged to have been aware, that the structure was being built for Keywell, and that it is foreseeable that their work would be relied on by Keywell, that alone is insufficient to satisfy the standard of negligent misrepresentation.  See Parrott, 95 N.Y.2d at 485, 718 N.Y.S.2d 709, 741 N.E.2d 506.  Because there was no conduct by Uzman or Barrett linking them to Keywell, there is no privity and can be no claim for economic loss.  See Ossining, 73 N.Y.2d at 425; see also, Port Auth. v. Rachel Bridge Corp., 192 A.D.2d 489, 490, 597 N.Y.S.2d 35, 36 (1st Dep't 1993) (dismissing action where plaintiff failed to establish that its relationship "sufficiently approached the functional equivalent of contractual privity" required to hold professional liable). Accordingly, the professional negligence claim must also be dismissed.

## IV. CONCLUSION

The Court finds that there are no material issues of disputed fact as to whether there was a contractual relationship between the parties, nor as to the existence of a functional equivalent of privity so as to give rise to a claim of professional negligence. Defendants Uzman and Barrett's motions for summary judgment are granted.

## V. ORDERS

IT HEREBY IS ORDERED that Defendant Zehn Burhan Uzman's Motion for Summary Judgment (Docket No. 176) is GRANTED;

FURTHER, that Defendants Douglas Barrett and Barrett Crane Design & Engineering's Motion for Summary Judgment (Docket No. 177) is GRANTED;

FURTHER, that all cross claims are dismissed;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: January 31, 2017
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge

14